## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL DEMURO-CORRELL, | : | Civil No. 3:24-cv-592 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | **FILED SCRANTON** |
| | : | |
| WARDEN HAIDLE, *et al.*, | : | MAY 0 2 2025 |
| | : | |
| Defendants | : | PER_____ DEPUTY CLERK |

### MEMORANDUM

Plaintiff Michael Demuro-Correll ("Demuro-Correll"), an inmate who was housed, at

all relevant times, as a pretrial detainee at the Monroe County Correctional Facility, in

Stroudsburg, Pennsylvania ("MCCF"), initiated this civil rights action pursuant to 42 U.S.C. §

1983.[1]  (Doc. 1).  Named as Defendants are Warden Haidle and Correctional Officer Kubik.

Presently before the Court is Defendants' motion (Doc. 20) for summary judgment pursuant

to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Court will grant

Defendants' motion and enter judgment in their favor.

---

[1]    Demuro-Correll is currently housed at the State Correctional Institution, Camp-Hill,
Pennsylvania.

I.     <u>**Statement of Undisputed Facts**</u>[2]

Demuro-Correll was formerly incarcerated as a pretrial detainee at the MCCF while

he was awaiting disposition of his criminal case in the Monroe County Court of Common

Pleas.  (Doc. 21 ¶ 1; Doc. 30 ¶ 1).  On January 20, 2023, Demuro-Correll pled guilty to

homicide and aggravated assault and was sentenced to 15 to 30 years' imprisonment.  (*Id.*

¶ 2).  Thereafter, Demuro-Correll was transferred to SCI-Camp Hill to serve his term of

imprisonment and is currently housed there.  (*Id.* ¶ 3).

Demuro-Correll's present claims relate to events that occurred at the MCCF on April

15, 2022, when he was a pretrial detainee.  (*Id.* ¶¶ 4-5).  Demuro-Correll asserts that, on

that date, a co-defendant in his criminal case cut him with nail clippers.  (*Id.* ¶ 4).  The

events of April 15, 2022 are as follows.

On April 15, 2022 at 2:23 p.m., Sergeant Armond informed Officer Kubik that

Demuro-Correll's father had just called to report that someone had hurt his son that day.

(*Id.* ¶ 6).  Demuro-Correll alleges that inmate Anthony Mitchell cut his face with a nail clipper

through an open tray slot in his cell door.  (*Id.* ¶¶ 6-7).  On April 15, 2022 at 2:28 p.m.,

Officer Kubik went to Demuro-Correll's cell.  (*Id.* ¶ 8).  Defendants maintain that Officer

---

[2]     Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  The factual background herein derives from the parties' Rule 56.1 statements of material facts and supporting exhibits.  (Docs. 21, 21-1, 27, 30, 31).

Kubik observed Demuro-Correll sitting on his bed and asked him if everything was ok, to which he replied, "Yea, why?" (Doc. 21 ¶¶ 8-9). Demuro-Correll admits that Officer Kubik went to his cell, but he denies that Kubik asked him if he was ok. (Doc. 30 ¶¶ 8-9). The parties agree that Demuro-Correll initially denied the existence of a problem. (Doc. 21 ¶ 10; Doc. 30 ¶ 10). Defendants aver that Demuro-Correll then became belligerent and verbally abusive to Officer Kubik after Kubik closed the tray pass in his cell door. (Doc. 21 ¶ 10). Demuro-Correll denies that he acted belligerently and verbally abusive. (Doc. 30 ¶ 10).

Demuro-Correll demanded to see the medical department immediately, characterizing his injury as an emergency. (Doc. 21 ¶ 11; Doc. 30 ¶ 11). Defendants aver that Officer Kubik looked at Demuro-Correll's face and observed only a superficial scratch. (Doc. 21 ¶ 11). Kubik contacted the medical department and spoke to a nurse and informed her what he observed. (*Id.* ¶ 12). The nurse instructed Kubik to tell Demuro-Correll to wash his face with soap and water. (*Id.*). Kubik then instructed Demuro-Correll to wash his face with soap and water. (*Id.*). Demuro-Correll agrees that Kubik instructed him to wash his face with soap and water; however, he believes Kubik provided this instruction prior to contacting the medical department. (Doc. 30 ¶ 12).

At 3:05 p.m., Officer Newell took Demuro-Correll to the medical department for evaluation and treatment. (Doc. 21 ¶ 13; Doc. 30 ¶ 13). Demuro-Correll returned to the unit at 3:30 p.m., approximately one hour after he demanded medical attention. (*Id.* ¶ 14). Another officer took a photo of the scratch on Demuro-Correll's face. (*Id.* ¶ 15). Demuro-

3

Correll was thus seen by a nurse less than one hour after he requested medical treatment. (*Id.* ¶ 16). Demuro-Correll avers that he only received medical attention after his family members called the prison and informed them about the incident. (Doc. 30 ¶ 16).

Defendants maintain that Demuro-Correll's scratch was not a serious medical need. (Doc. 21 ¶ 17). Demuro-Correll contends that the "so called scratch was deep enough to leave [a] permanent scar…[and that] a serious medical need is always attached to [a] victim of assault no matter how minor the actual injury turns out to be." (Doc. 30 ¶ 17).

Facts Related to Grievances

The MCCF has a grievance procedure that is described in the Inmate Handbook. (Doc. 21 ¶ 18; Doc. 30 ¶ 18). Demuro-Correll was given a copy of the Inmate Handbook when he was first incarcerated at the MCCF. (*Id.* ¶ 19). The grievance procedure allows an inmate to make complaints about: (1) the conditions of his confinement; (2) complaints against specific officers relating to their treatment of him or about officers' misbehavior; (3) his dissatisfaction with his medical care; and (4) claims that an officer subjected him to harm or failed to provide him with a proper level of medical care. (*Id.* ¶ 21).

The claims in Demuro-Correll's complaint are the types of claims that are covered by the MCCF grievance procedure. (*Id.* ¶ 22).

The grievance procedure provides for several levels of review if an inmate is dissatisfied with the response he receives from his grievances. (*Id.* ¶ 23). Warden Haidle is

the final level of review in the grievance process and all grievances and decisions responding to grievances or grievance appeals are commemorated in writing. (*Id.* ¶ 24).

Defendants maintain that Demuro-Correll did not exhaust his grievance remedies concerning: (1) a failure to provide him with an appropriate level of medical care; (2) the misconduct of defendants Haidle and Kubik; and (3) complaints relating to the policies of Monroe County. (Doc. 21 ¶ 25). Defendants maintain further that if Demuro-Correll submitted grievances relating to the claims in his complaint, they could have been investigated and addressed. (*Id.* ¶ 26).

Demuro-Correll asserts that he filed a grievance on April 22, 2022, concerning the claims in his complaint. (Doc. 30 ¶ 25). He contends that Warden Haidle responded to the grievance on May 5, 2022, and stated "this matter has been resolved and proper action taken." (*Id.*).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine
issue for trial.  The mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine issue of
material fact.  When opposing parties tell two different stories, one of which is
blatantly contradicted by the record, so that no reasonable jury could believe
it, a court should not adopt that version of the facts for purposes of ruling on a
motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

III.    **Discussion**

A.      Exhaustion of Administrative Review[3]

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, *et seq.*,

requires prisoners to exhaust available administrative remedies before suing prison officials

for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639,

642 (2016) (explaining that only "available" remedies must be exhausted).  Proper

exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that

cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85

(2006).  However, there are situations in which a grievance procedure may be rendered

"unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use

it, *Ross*, 578 U.S. at 643-44, when intimidation by means of "serious threats of retaliation

and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d 257, 266-

---

[3]    On March 31, 2025, the Court issued an Order apprising the parties that it would consider
exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)
and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to
supplement the record with any additional evidence relevant to exhaustion of administrative remedies.
(Doc. 32).

67 (3d Cir. 2018), or when a prison has "rendered its administrative remedies unavailable...

when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and

then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v.

Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016); *see also Shifflett v.

Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a

judge, even if that determination requires the resolution of disputed facts." *Small v. Camden

Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d

Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial

traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is

to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739,

741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9

(M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a

plenary trial on the contested facts prior to making [an exhaustion of administrative

remedies] determination."). "Although the availability of administrative remedies to a

prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at

271 (citations omitted).

Demuro-Correll argues that he has fully exhausted his administrative remedies and

that Warden Haidle responded on final review. (Doc. 30 ¶ 25; Doc. 31, at 36). In support of

his position, Demuro-Correll submitted a grievance wherein he stated:

> Friday, the 15th I was on B-Unit around adults and my co defendant.  C/O
> Kubik was on 1st shift.  He was also the Block Officer.  He was sitting down or
> standing now that I remember.  My co defendant was next on recreation.

(Doc. 31, at 36).  For relief he requested: a "guarantee to my safety and security and a little

more freedom from cell.  And C/O Kubik to stay away from me.  And a guarantee to my

juvenile rights." (*Id.*).  Upon initial review, on April 27, 2022, Demuro-Correll was advised

that he "cannot grieve to have an officer not work with you.  Your status will be discussed at

classification." (*Id.*).  At the final level of review, on May 5, 2022, Warden Haidle advised

that "this matter has been resolved and proper action taken." (*Id.*).  While Demuro-Correll

has submitted this grievance related to April 15, 2022, and it was addressed on final review

by Warden Haidle, the grievance does not allege that he received inadequate medical care,

or that Defendants Haidle and Kubik violated his constitutional rights. (*See id.*).  However,

the grievance appears to be missing a page and does not appear to contain Demuro-

Correll's entire statement. (*See id.*).

In contrast, Defendants have presented evidence in the form of an affidavit from

Warden Haidle wherein he attests that all of Demuro-Correll's grievance forms have been

submitted to the Court. (Doc. 36, at 6 ¶ 4, Second Declaration of MCCF Warden Garry

Haidle ("Haidle Decl.")).  The above-referenced grievance submitted by Demuro-Correll

pertaining to April 15, 2022, has not been provided to the Court by Defendants.  In his

affidavit, Warden Haidle further attests that Demuro-Correll did not file any grievances to the

final level of review concerning the claims in the complaint, any claims against Haidle or

9

Kubik, or any claims that any staff members created conditions that were dangerous for him or deprived him of adequate medical care; and, thus, Demuro-Correll did not exhaust all of his available MCCF grievance remedies outlined in the Inmate Handbook. (Doc. 21-1, at 30 ¶ 7, First Declaration of MCCF Warden Garry Haidle ("Haidle Decl.")); Doc. 36, at 6 ¶¶ 3-4, Second Haidle Decl.).

On the record, and it appearing that the grievance related to April 15, 2022 is incomplete, there is a genuine dispute of material fact as to whether Demuro-Correll filed a grievance based on the claims he is now pursuing. Therefore, summary judgment on the basis of exhaustion will be denied.

B.    Deliberate Indifference to Serious Medical Needs Claim

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees,[4] typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). To satisfy the objective component, inmates must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "To satisfy the subjective component, the plaintiff must

---

[4]    Demuro-Correll was a pretrial detainee at the Monroe County Correctional Facility all relevant times. (Doc. 21 ¶ 1; Doc. 30 ¶ 1). Therefore, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Id.* In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837*); cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious."[5] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318

---

[5]   The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

F.3d 575, 582 (3d Cir. 2003). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Significantly, if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. *Spruill*, 372 F.3d at 236 (discussing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

With respect to the serious medical need requirement, it has been recognized by the Third Circuit Court of Appeals that cuts requiring no more than small bandages are not a serious medical needs covered by the Eighth Amendment. *See Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007). The evidence reflects that Defendant Kubik initially instructed Demuro-Correll to clean his facial injury with soap and water. (Doc. 21 ¶¶ 12-13; Doc. 30 ¶¶ 12-13). The evidence also reflects that Demuro-Correll was then evaluated by medical personnel, a photograph was taken of his facial injury, the injury did not require treatment, and did not result in any type of long-lasting harm. (Doc. 27, at 15). The nurse's evaluation, dated April 15, 2022, describes the medical evaluation of Demuro-Correll as follows:

> While on duty as facility nurse at above mentioned date and time[,] this nurse
> assessed inmate Demuro after incident on housing unit.  Patient/inmate
> stated he was "looking out tray pass at tv and my co-d slashed me."  Upon
> physical evaluation[,] this nurse noted 3cm x 1mm scratch to right orbital
> area.  No other injuries voiced or noted.  No new restrictions house per
> security.

(*Id.*) (sic).  Demuro-Correll has not come forth with any evidence that the scratch on his face

constituted anything more than a superficial scratch.  There is no evidence that his scratch

required stitches, Steri-Strips, bandages, or the like.  Demuro-Correll's belief that "a serious

medical need is always attached to [a] victim of assault no matter how minor the actual

injury turns out to be[,]" is incorrect.  (Doc. 30 ¶ 17).  A medical need is serious if it "has

been diagnosed by a physician as requiring treatment" or if it "is so obvious that a lay

person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr.*

*Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted).

Additionally, "if 'unnecessary and wanton infliction of pain' results as a consequence of

denial or delay in the provision of adequate medical care, the medical need is of the serious

nature contemplated by the eighth amendment."  *Id.* (quoting *Estelle*, 429 U.S. at 103).

Further, "where denial or delay causes an inmate to suffer a life-long handicap or

permanent loss, the medical need is considered serious."  *Id.*  The scratch to Demuro-

Correll's face does not constitute an obvious serious medical need as required under

*Estelle.  See Gray v. Wakefield*, No. 3:09-cv-0979, 2012 WL 4509752, at *6 (M.D. Pa. Sept.

28, 2012) ("[T]he courts have repeatedly determined that [cuts, bruises, and bleeding] do

not constitute a serious medical need.")

13

Assuming *arguendo* that Demuro-Correll satisfied the serious medical need threshold, with respect to the subjective deliberate indifference component of *Estelle*, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. The evidence of record does not establish that Demuro-Correll's scratch posed a substantial risk of serious harm which was apparent to Defendants and ignored. The evidence instead reflects that Defendant Kubik observed Demuro-Correll's face, instructed him to wash it with soap and water, and that Demuro-Correll was promptly transported to the medical department for further evaluation. (Doc. 21 ¶ 8, 11-16; Doc. 30 ¶ 8, 11-16). The evidence further reflects that Warden Haidle was not on the housing unit on April 15, 2022, and did not interact with Demuro-Correll on that date. Accordingly, the subjective deliberate indifference component has also not been met.

Furthermore, Warden Haidle and Correctional Officer Kubik are not medical professionals. There is no evidence that medical personnel failed to treat Demuro-Correll or that his medical treatment was wholly inadequate. In fact, the parties agree that Demuro-Correll was treated by the medical department less than one hour after he sought medical attention. (Doc. 21 ¶ 16; Doc. 30 ¶ 16). Additionally, there is no evidence that Defendants were aware of any medical requirements and deliberately ignored them. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with the Eighth

Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236; *see also Durmer*, 991 F.2d at 69 (finding that failure by nonmedical prison officials to respond to medical complaints from prisoner-plaintiff "already being treated by the prison doctor" does not establish deliberate indifference). Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Demuro-Correll failed to meet this burden. There is no evidence creating a genuine issue of material fact on the inadequate medical care claim. Viewing the facts and drawing all reasonable inferences in the light most favorable to Demuro-Correll, there are no facts in the record to make a sufficient showing on the essential elements of his claim. Defendants are entitled to summary judgment on the inadequate medical care claim.

C.    Qualified Immunity

Even if Demuro-Correll had stated a colorable claim, Defendants are nevertheless entitled to qualified immunity from this claim for damages. In order to establish a civil rights claim, Demuro-Correll must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing

"discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly

16

established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). As stated, the Court finds that Demuro-Correll failed to establish the violation of a constitutional right. Defendants simply could not have recognized that Demuro-Correll's failure to receive medical attention quicker than sixty minutes, would violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson*, 526 U.S. at 609. Therefore, Defendants are protected from liability by qualified immunity.[6]

## IV.  Conclusion

Consistent with the foregoing, the Court will grant Defendants' motion (Doc. 20) and enter judgment in their favor. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May 2, 2025

---

[6]    Defendants' motion addresses a potential claim against Monroe County under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), though they acknowledge that Monroe County was not named as a Defendant. (Doc. 22, at 11-13). It is clear that Monroe County was not named as a Defendant in the complaint, and no such *Monell* claim was raised. (*See* Doc. 1). Therefore, the Court will not enter judgment in favor of Monroe County and will not address the phantom *Monell* claim.